UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAURA CHEATHAM, et al.,

        Plaintiff(s),        CASE NUMBER: 07-13168
                                        HONORABLE VICTORIA A. ROBERTS

v.

ALPHONSO JACKSON, Secretary
of the U.S. Department of Housing and
Urban Development (HUD), in his official
capacity, et al.,

        Defendant(s).
_____/

ORDER

**I.    INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction. For the reasons stated below, Plaintiffs' motion is **DENIED**.

**II.    BACKGROUND**

Plaintiffs are the Parkview Tenants' Association ("PTA") and four PTA members who reside at Parkview Apartments ("Parkview")--Taura Cheatham, Legean Howell, Nachelle Johnson, and Lola Yarbough. Parkview is a 144-unit apartment complex in Ypsilanti, Michigan which houses low-income families. Parkview Apartments Non-Profit Housing Corporation ("the Corporation") has owned Parkview for over 30 years. Plaintiffs sue the United States Department of Housing and Urban Development ("HUD"), HUD Secretary Alphonso Jackson, and "unknown HUD officials" who participated in certain decisions regarding Parkview. To the extent they are unrefuted,

1

the relevant facts are taken from Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief and affidavits attached to the parties' briefs.

The Corporation financed its purchase/construction of Parkview via a mortgage insured by HUD under Section 236 of the National Housing Act, 12 U.S.C. §§1701; 1715z-1. The Corporation also received a monthly interest reduction payment which effectively reduced the loan interest rate to one percent per annum. In exchange for the Section 236 loan and interest reduction payments, the Corporation entered into a Regulatory Agreement with HUD which outlined the Corporation's ownership and management obligations.

In 1982, HUD began providing a "Section 8" subsidy for 20 Parkview units. The subsidy is provided pursuant to a Housing Assistance Payments ("HAP") contract under Section 8 of the United States Housing Act of 1937, 42 U.S.C. §1437f, and it is project-, rather than tenant-, based. For project-based Section 8 subsidies, HUD pays a percentage of the rent for tenants in designated units and the tenant is responsible for the balance. The subsidy is attached to the units. For tenant-based subsidies, HUD provides a rent subsidy to a family or individual (via a "housing choice voucher") which is portable; it may be used at any property which meets HUD requirements.

In September 2003, HUD declared that the Corporation was in default of its obligations under the Regulatory Agreement. Among other things, the property and units were poorly maintained and there were persistent delinquencies in payment of the water bill, which resulted in a water lien and threats of shut-off and foreclosure. In December 2003, the mortgage was assigned to HUD. Two months later, in February 2004, HUD declared the mortgage in default.

HUD made several failed attempts (due to opposing litigation and a bankruptcy filing by the owner) between 2004 and 2006 to foreclose on the defaulted mortgage and complete a foreclosure sale. During that time, the condition of the property and units continued to decline. There has also been a steady decline in the occupancy level; more than half of the units are vacant and boarded up. First Amended Complaint, Exh. I at ¶3. Plaintiffs attribute the drop in occupancy in part to Defendants' failure to advertise units or qualify tenants for admission.

In July 2006, HUD agreed to become the Mortgagee in Possession ("MIP") of the property. As the MIP, HUD acts in a fiduciary capacity for the owner and assumes management responsibilities, including rent collection, repairs, security, and property expenses. A few months prior to HUD assuming MIP status and thereafter, Plaintiffs asked HUD to address various concerns about the condition of the property and future disposition plans. Among other things, Plaintiffs asked for repairs to the property and units, that HUD retain the project-based contract but issue Section 8 vouchers to all Parkview tenants who do not live in designated units, development of a plan to ensure the property will continue to be affordable for low-income households, and that the property be transferred to a non-profit entity committed to preserving it as low-income housing.

On March 28, 2007, HUD gave Parkview residents written notice and held a meeting with tenants regarding its intent to renew foreclosure efforts and hold a foreclosure sale. HUD told residents that the sale would be conditioned upon the buyer agreeing: 1) that the property be maintained as affordable housing for 20 years; 2) to perform the repairs necessary to meet state and local codes and HUD's requirements;

and 3) to give tenants at least 60 days notice if temporary relocation is necessary in order to complete repairs.  Complaint, Exh. F.  HUD also indicated that: 1) it will not issue vouchers to tenants not currently covered by the project-based Section 8 contract, but that the project-based assistance would continue for 20 units, 2) HUD will place a recorded use agreement on the property that will restrict the rents for 20 years from the sale of the property, and 3) rents will be frozen to the amount billed prior to foreclosure for one year for tenants who are not covered under the current Section 8 contract.  *Id.*

The following month, Plaintiffs' counsel sent a letter to HUD outlining its concerns about the proposed sale.  *Id.*  Two of those concerns precipitated this action.  First, Plaintiffs asserted that HUD is obligated by statute and its own practices to issue tenant protection vouchers to all of the residents and units not covered by the project-based contract.  ("Tenant protection vouchers" are not defined in the letter or briefs.)  Second, as an alternative to the foreclosure sale, Plaintiffs urged Defendants to adopt United State Representative John Dingell's suggestion that HUD cancel the proposed sale and reinstate prior negotiations for a discounted sale to the Ypsilanti Housing Commission ("YHC"). (In correspondence with Plaintiffs' counsel, HUD said negotiations with YHC were terminated when the parties could not finalize the sales terms.)  In response, HUD asserted that changes in the Deficit Reduction Act of 2005, 109 P.L. 171, Title II, Subtitle A, Sec. 2002(a), preclude it from selling the property to the YHC at a discounted price, and that it does not have authority to issue tenant protection vouchers to residents who were not receiving project-based assistance prior to the foreclosure.

A foreclosure sale was scheduled for August 8, 2007.  Plaintiffs filed a Complaint for Declaratory and Injunctive Relief on July 30, 2007.  On August 2, 2007, Plaintiffs'

4

counsel, James Schaafsma, says Defendants' counsel, Stacey Singleton, orally informed him of several steps Defendants intended to take if Plaintiffs did not dismiss the Complaint and allow the foreclosure sale to go forward. Singleton allegedly said HUD would: 1) cancel the foreclosure sale; 2) abate the current project-based contract covering the 20 units; 3) withdraw as MIP; 4) provide vouchers only to residents in the 20 covered units; 5) return the property to the bankrupt owner; and 6) conduct a foreclosure sale on new terms with demolition being the probable outcome.

Plaintiffs would only agree to allow the sale to go forward if Defendants agreed to provide vouchers to all tenants. Defendants refused to do so. Defendants also initially refused to cancel the sale, but relented when Plaintiffs filed a Motion for Temporary Restraining Order on August 6, 2007.

On September 20, 2007, Plaintiffs filed their First Amended Complaint for Declaratory and Injunctive Relief. In the Amended Complaint, Plaintiffs allege four claims: Count I--violation of the Administrative Procedures Act ("APA"); Count II--violation of the Fifth Amendment (*i.e.,* that Defendants' failure to issue vouchers, maintain the property, and give proper notice of the current disposition plan violates due process); Count III--misapplication of the Deficit Reduction Act; and, Count IV-- First Amendment retaliation.

Pending a resolution of their claims, Plaintiffs request an immediate injunction which 1) requires Defendants to comply with their statutory obligation to maintain full occupancy (by renting vacant units), and make repairs in accordance with state and local law, and 2) bars Defendants from proceeding with a foreclosure sale or other disposition without formal notice to Parkview tenants and an opportunity for them to be

5

heard.

## III. APPLICABLE LAW AND ANALYSIS

When deciding motions for preliminary injunction, a district court must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). No single factor is dispositive. The court must balance each factor to determine whether they weigh in favor of an injunction. *Id.*

Plaintiffs contend that there is a likelihood of success on their claims in Counts I and II that Defendants violated the APA and Plaintiff's Fifth Amendment due process rights by failing to make repairs, maintain full occupancy, and give tenants notice and an opportunity to be heard before going forward with their current disposition plan.

### a. Count I--Violation of APA

Plaintiffs say Defendants failed to meet their management obligations under the Multi-Family Housing Property Disposition Reform Act ("the Disposition Reform Act"), 12 U.S.C. §1701z-11, *et seq.* Specifically, Plaintiffs assert that Defendants failed to maintain Parkview in a "decent, safe, and sanitary condition" and to maintain full occupancy "to the greatest extent possible" as is explicitly required. 12 U.S.C. §1701z-11(d)(2)(A)-(B).[1]

---

[1]The Disposition Reform Act states:

(d) Management and maintenance of properties

6

Plaintiffs seek to remedy Defendants' alleged violation via the APA. Generally, under the APA "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702. The reviewing court must "compel agency action unlawfully withheld or unreasonably delayed" and/or hold unlawful and set aside agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706.

Defendants point out that, despite the presumption in favor of judicial review under the APA, *Lincoln v Vigil*, 508 U.S. 182, 190 (1993), there are two exceptions to a court's authority to do so. Judicial review is not permitted under the APA if: 1) "statutes preclude judicial review," or 2) "agency action is committed to agency discretion by law."

***

> (2) Maintenance of projects owned by Secretary
>
> In the case of multifamily housing projects that are owned by the Secretary (or for which the Secretary is mortgagee in possession), the Secretary shall--
>
>> (A) to the greatest extent possible, maintain all such occupied projects in a decent, safe, and sanitary condition and in compliance with any standards under applicable State or local laws, rules, ordinances, or regulations relating to the physical condition of the housing and any such standards established by the Secretary;
>>
>> (B) to the greatest extent possible, maintain full occupancy in all such projects[.]

12 U.S.C. §1701z-11(d)(2)(A)-(B).

5 U.S.C. §701(a). Defendants contend that the second exception applies because Section 204 of the Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1997 ("Section 204"), 12 U.S.C. §1715z-11a(a), explicitly cloaks HUD with "unfettered discretion in establishing the terms and conditions involved in the management and disposition of multifamily properties where HUD is the mortgage holder." Defs. br. at p. 7.

Section 204 states:

> (a) Flexible authority for multifamily projects
>
> During fiscal year 1997 and fiscal years thereafter, ***the Secretary may manage and dispose of multifamily properties owned by the Secretary***, including, for fiscal years 1997, 1998, 1999, 2000, and thereafter, the provision of grants and loans from the General Insurance Fund (12 U.S.C. 1735c) for the necessary costs of rehabilitation, demolition, or construction on the properties (which shall be eligible whether vacant or occupied), and multifamily mortgages held by the Secretary ***on such terms and conditions as the Secretary may determine, notwithstanding any other provision of law.***

12 U.S.C. §1715z-11a(a) (emphasis added). Defendants argue that the "flexible authority" conferred by Section 204 supercedes the provisions of the Disposition Reform Act Plaintiffs rely upon, and by its plain language wholly commits HUD's management and disposition of multifamily properties to agency discretion. Defendants contend that Congress' use of the phrase "notwithstanding any other provision of law" evidences its intent that Section 204 preempt all other statutes and regulations which otherwise govern HUD's management and disposition decisions. Therefore, Defendants say HUD's actions (or alleged inactions) with regard to repairs and occupancy are not subject to the Court's review.

Plaintiffs argue the "agency discretion" exception does not apply. They point out that it is a narrow exception which only applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by, Califano v Sanders*, 430 U.S. 99 (1977); *Lincoln*, 508 U.S. at 191. Here, however, Plaintiffs contend that there is "law to apply;" namely the repair and occupancy obligations set forth in the Disposition Reform Act(12 U.S.C. §1701z-11(d)(2)), and the housing goals outlined in the Disposition Reform Act (12 U.S.C. §1701z-11(a)(3)) and the National Housing Act (42 U.S.C. §1441).[2] Per Plaintiffs, ignoring these provisions under Defendants' theory would amount to their repeal by implication, which is

---

[2]The National Housing Act states in part:

> The Congress declares that the general welfare and security of the Nation and the health and living standards of its people require housing production and related community development sufficient to remedy the serious housing shortage, the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family, thus contributing to the development and redevelopment of communities and to the advancement of the growth, wealth, and security of the Nation.

\* \* \*

> The Department of Housing and Urban Development, and any other departments or agencies of the Federal Government having powers, functions, or duties with respect to housing, shall exercise their powers, functions, and duties under this or any other law, consistently with the national housing policy declared by this Act and in such manner as will facilitate sustained progress in attaining the national housing objective hereby established[.]

42 U.S.C. §1441.

disfavored.

Plaintiffs also argue that HUD's own regulations in 24 C.F.R. §290, *et seq.*, only refer to its flexible authority in the context of the disposition of multifamily properties, not HUD's management of them. Plaintiffs say the regulations' focus on HUD's disposition obligations, some of which became effective after Section 204 was enacted, implies that HUD declined to exercise flexible authority with respect to management matters. And, Plaintiffs point out that one court held that HUD's flexible authority does not preclude the Court from reviewing a claim that HUD violated its own regulations. *See Massie v United States Department of Housing and Urban Development,* 2007 W.L. 674597 (2007).

The Sixth Circuit has not addressed the scope of Section 204 or how to reconcile it with the Disposition Reform Act and the APA. And, the parties cite conflicting decisions in support of their respective positions.

Plaintiffs cite several cases in which the courts found that HUD's administrative decisions were reviewable even though the governing statutes included "notwithstanding" language similar to that in Section 204. *See Russell v Landrieu*, 621 F.2d 1037 (9th Cir. 1980); *United States v Winthrop Towers*, 628 F.2d 1028 (7th Cir. 1980); *Lee v Kemp*, 731 F.Supp. 1101 (D.D.C. 1989).

In its analysis rejecting the notion that HUD had blanket authority over a foreclosure decision and that there was "no law to apply," the *Winthrop Towers* Court cited the National Housing Act's directive that HUD exercise its powers and perform its duties "consistently with the national housing policy declared by [the] Act," 42 U.S.C. §1441, and held that "[t]his language compels our conclusion that HUD's decision to

foreclose may be reviewed to determine whether it is consistent with national housing objectives." 628 F.2d at 1034-1035. Despite the "notwithstanding" language in the statute at issue, the Court was unwilling to embrace the idea that HUD's discretion with regard to mortgage foreclosures is unlimited, absent "clear and convincing evidence" that Congress so intended. *Id* at 1035.

At least two courts, however, construed the "notwithstanding" language in Section 204 more broadly. Defendants attach two unpublished district court opinions in which: 1) injunctive relief was sought and denied, 2) the courts found that the grant of discretion in Section 204 preempts other statutes or regulations which restrict HUD's authority, and 3) the broad grant of discretion was deemed to preclude judicial review. *See Mays v Cuomo*, U.S. District Court for Southern District of Ohio, Case no. C-1-96-929 (May 21, 1998); *Chicago Acorn v The United States Department of Housing and Urban Development*, United States District Court for the Northern District of Illinois ,Case no. 05-C-3049 (October 5, 2005).

In *Mays,* Plaintiffs argued, *inter alia*, that 24 C.F.R. §290, *et seq.*, provides the Court with specific law to apply in determining whether the Secretary abused his discretion. The *Mays* Court, however, held that Plaintiffs' assertion was belied by the "notwithstanding" language in Section 204. Citing a number of decisions which interpreted "notwithstanding" or similar phrases to preempt conflicting statutes or regulations, the *Mays* Court stated that "by the language used in §204, Congress clearly illustrated its intent that §204 preempt other statutes and regulations such as 24 C.F.R. 290" and authorized the Secretary "to use his discretion, unencumbered by any statutory or regulatory guidelines." Def. Exh. 8 at 9-10. Because (in its view) Section

11

204 foreclosed judicial review, the *Mays* Court found that it did not have subject matter jurisdiction.

The United States District Court for the Northern District of Illinois applied the same reasoning in *Chicago Acorn*. The Court found that Section 204's "notwithstanding" language unambiguously conferred broad discretion upon HUD to set the terms and conditions for disposing of multifamily properties. The Court further found that Congress apparently intended that the grant of authority in Section 204 would preempt the Disposition Reform Act and the National Housing Act, inasmuch as Section 204 was enacted after those statutes and Congress is presumed to have been aware of (what the *Chicago Acorn* Court regarded as) their inconsistency with Section 204. *See* Def. Exh. 9 at 7-8.

The Court is not bound by *Mays* or *Chicago Acorn* and is not persuaded that Section 204 sweeps as broadly as Defendants or either Court contends. As Plaintiffs point out, there is a strong presumption in favor of judicial review under the APA. *Bowen v Michigan Academy of Family Physicians,* 476 U.S. 667, 670 (1986)(superceded and abrogated on other grounds). The narrow exception Defendants rely upon only applies "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v Chaney*, 470 U.S. 821, 830 (1985). Defendants base their claim that Section 204 is such a statute on their contention that the "notwithstanding" language renders a nullity any other statute which purports to direct or restrict HUD's discretion regarding the management and disposition of multifamily properties. However, "notwithstanding" clauses such as in Section 204 only preempt "any other statute that could interfere or

hinder [the subject statute's] objectives," *Jewish Center for the Aged v United States Department of Housing and Urban Development*, 2007 W.L. 2121691, *5 (E.D. Mo. 2007), or "contradictory provisions in the same contract or statute." *GP-UHAB Housing Development Fund Corp. v Jackson*, 2006 W.L. 297704, *8 (E.D. N.Y. 2006). *See also Cisneros v Alpine Ridge*, 508 U.S. 10, 18 (1993)("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.").

Unlike *Chicago Acorn*, the Court finds that neither the objectives set forth in the National Housing Act nor the directives in the Disposition Reform Act conflict with the discretion granted HUD in Section 204. The National Housing Act and (the relevant provisions of) the Disposition Reform Act broadly outline Congress' overriding goal of providing and maintaining "decent" housing. But, neither Act explicitly dictates *the manner* in which the Secretary and HUD are to carry out that goal. The relevant provisions of the Disposition Reform Act only state that to the "greatest extent possible," HUD must maintain full occupancy, and maintain occupied projects in a "decent, safe and sanitary condition" in compliance with local laws and regulations. 12 U.S.C. §1701z-11(d)(2)(A)-(B). This broad mandate cannot reasonably be construed as an impediment to the discretion Congress afforded the Secretary and HUD to "manage and dispose of multifamily properties . . . . *on such terms and conditions* as the Secretary may determine." 12 U.S.C. §1715z-11a(a). At most, Section 204 codifies what the courts have long recognized--that HUD has "broad discretion to choose between alternative methods of achieving the national housing objectives." *See Federal Property Management Corporation v Harris*, 603 F.2d 1226, 1231 (6th Cir. 1979). Without a more

13

explicit pronouncement than is set forth in Section 204, the Court is unwilling to find that Congress intended to grant HUD unfettered discretion and remove from courts the ability to determine if HUD's management and disposition decisions are consistent with the objectives and priorities of the National Housing Act.

In sum, the Court finds there is no conflict between Section 204 and the National Housing Act and the Disposition Reform Act, and that both Acts provide the Court with "a meaningful standard against which to judge [HUD's] exercise of discretion" with regard to the management and disposition of multifamily properties. *Heckler*, 470 U.S. at 830. Defendants fail to establish that Section 204 affords it the type of "unfettered discretion" which would bring it within the "agency discretion" exception to the presumption of judicial review.

Nevertheless, Plaintiffs fail to show they have a likelihood of success on their claims in Count I. There is no evidence Defendants are ignoring their obligation to maintain the units in a "decent, safe and sanitary" condition or at full occupancy, "to the greatest extent possible." It is undisputed that Parkview is in significant disrepair. But, the evidence presented shows that Defendants hired a new management company in April 2007 and have made significant and steady progress in bringing the units in compliance with the Ypsilanti city code. Progress is evidenced by a drastic and continuing reduction in the number of city code violations. Specifically, the property was cited for over 450 violations in April 2007. By October 19, 2007, that number was 251. According to Ypsilanti Mayor Paul T. Schrieber (in his December 12, 2007 letter to the Court), outstanding violations were reduced to 185 as of November 30, 2007. Also, as of August 8, 2007, HUD spent $1,429,560 for property management. Aff. of Holly Gully,

14

Def. Exh. 13 at ¶12.

While Defendants vaguely assert (in a letter to the Court from counsel) that their obligation to continue making repairs is limited to what they deem to be "critical health and safety issues," it appears from their actions that they understand their obligation extends at least as far as bringing the property and units in compliance with the local city code, which is consistent with the Disposition Reform Act directive that HUD maintain its properties "in compliance with any standards under applicable State or local laws, rules, ordinances, or regulations relating to the physical condition of the housing[.]" 12 U.S.C. §1701z-11(d)(2)(A). Plaintiffs do not show that more is required.

With respect to Plaintiffs' complaint about the declining occupancy level, there is no support for Plaintiffs' claim that Defendants have "done nothing to promote occupancy at Parkview." Pl. br. at p. 11. Defendants do not dispute Ypsilanti Housing Inspector Frank Daniels' assertion that more than one-half of the Parkview units are vacant. *See* First Amended Complaint, Exh. I at ¶3. But, Plaintiffs acknowledge that, because of the outstanding repairs, Parkview has not had a certificate of compliance and occupancy permit which allows it to operate as rental housing since the year 2000. *See* First Amended Complaint at ¶83. And, although the evidence shows that Defendants are making efforts to make necessary repairs, Mayor Schrieber advises (in his letter) that only 39 to 45 of the 144 units are expected to have such a permit by January 2008. Plaintiffs, therefore, fail to show that the vacant units are suitable for recruitment of new tenants or that Defendants unduly delay efforts to bring those units in compliance with the local city code.

Plaintiffs fail to establish a likelihood of success on their claim in Count I based

15

on needed repairs and the occupancy level.

>  b. **Count II--Violation of Fifth Amendment**

In Count II, Plaintiffs claim Defendants' failure to make repairs, promote full occupancy, and give residents proper notice of the current disposition plan and an opportunity to be heard violate the Fifth Amendment. The Court accepts, without deciding, Plaintiffs' contention that they have a property interest in the terms and conditions of their Section 8 housing to which due process rights attach. *See Davis v Mansfield Metropolitan Housing Authority*, 751 F.2d 180, 184 (6th Cir. 1984)(accepting defendants' concession that "participation in a public housing program is a property interest protected by due process," and noting that other courts have similarly ruled). However, for the reasons already stated, Plaintiffs fail to show that Defendants, in fact, have not made repairs or promoted full occupancy.

With respect to Defendants' disposition plans, Plaintiffs are correct that the Secretary is required to "obtain appropriate and timely input into disposition plans from officials of the unit of general local government affected, the community in which the project is situated, and the tenants of the project." 12 U.S.C. §1701z-11(c)(2)(D)(i). However, Plaintiffs fail to establish that a disposition plan which will ultimately displace all of the Parkview tenants is imminent. Defendants do not dispute that future plans may include selling the property and demolishing the buildings. But, Plaintiffs do not present evidence that any steps have been taken thus far to formally institute such a plan. Absent such evidence, there is no basis to find that Parkview residents have not or will not receive adequate notice and opportunity to offer input should Defendants decide to go forward. Plaintiffs fail to establish a likelihood of success on their Fifth

Amendment claim.

Because Plaintiffs failed to establish a factual basis for their claims, the Court is not persuaded that the remaining factors weigh in their favor. Plaintiffs' motion is **DENIED**.

**IT IS ORDERED.**

                                                     s/Victoria A. Roberts
                                                   Victoria A. Roberts
                                                   United States District Judge

Dated: December 27, 2007

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 27, 2007.

s/Linda Vertriest
Deputy Clerk

---