UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAURA CHEATHAM, LEGEAN HOWELL,
NACHELLE JOHNSON, LOLA YARBOUGH
and the PARKVIEW TENANTS' ASSOCIATION,

              Plaintiffs,          CASE NUMBER:  07-13168
                                        HONORABLE VICTORIA A. ROBERTS

v.

SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT (HUD), in his official capacity,
and HUD,

              Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION
## TO MODIFY SCHEDULING ORDER (PHASE I) TO PERMIT DEPOSITION

**I.     INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion to Modify Scheduling Order (Phase I) to Permit Deposition (Doc. #42).  Plaintiffs' motion is **GRANTED**.

**II.    BACKGROUND**

Plaintiffs are the Parkview Tenants' Association ("PTA") and four PTA members who reside at Parkview Apartments ("Parkview"), a 144-unit apartment complex for low-income families in Ypsilanti, Michigan.  In July 2007, Plaintiffs sued the Secretary of the United States Department of Housing and Urban Development ("HUD"), over HUD's attempts to relocate the residents of Parkview and to foreclose the apartment complex.

On December 7, 2007, the Court entered a scheduling order giving the parties one year, until December 1, 2008, to complete discovery (Doc. #20).  In March and April

2008, HUD issued relocation offer notices to Parkview residents. HUD postponed acting on these notices several times because of legislation pending in Congress which might affect the property's disposition. The legislation in question, Section 226 of Public Law No. 110-289 ("Section 226"), was passed on July 31, 2008.

On August 26, 2008, HUD sent Plaintiffs a letter stating it would not transfer Parkview to the Ypsilanti Housing Commission, as Plaintiffs had hoped. Plaintiffs reacted by filing a motion for Preliminary Injunction, on September 18 (Doc. #32).

After a telephone conference with the parties, the Court entered a Stipulation and Order providing, *inter alia*, that if HUD decides to proceed with the relocation, it must notify Plaintiffs and the Court, and that any action on the relocation will be stayed until the Court rules on Plaintiffs' injunction request (Doc. #34). The Stipulation and Order listed the briefing schedule for Plaintiff's motion; however, this schedule was extended several times, while the parties attempted to settle their dispute.

In late September and early October 2008, the parties explored settlement options. Each side describes the talks differently. Plaintiffs' counsel claim settlement discussions were very advanced, and that HUD's attorneys led them to believe an agreement could be reached. HUD answers that it always made clear settlement was only one of two options; the other was to continue litigation.

Plaintiffs' counsel Robert Gillett provides an affidavit stating he discussed the settlement on September 23 with Nancy Christopher and Gary Nemec, counsel for HUD. After the call, Mr. Gillett drafted an outline of a settlement proposal and sent it to Ms. Christopher and Mr. Nemec. During another conversation on September 29, Mr. Gillett claims Ms. Christopher said she was working on one final issue and would

contact him the next day with a response to Plaintiffs' offer. On October 1, Mr. Gillett states he had two conversations with Ms. Christopher and Mr. Nemec, during which they discussed the settlement offer in great detail. According to Mr. Gillett, there was no significant disagreement concerning principal terms, and Ms. Christopher promised to get back to him early in the week of October 5.

On October 5, Mr. Gillett sent Ms. Christopher and Mr. Nemec and e-mail titled "next steps on settlement," which stated:

> We've had some internal discussions about the (still developing) settlement offer from HUD. I think it would help move things more quickly (and we're very interested in either reaching an agreement or realizing that there isn't an agreement to be reached as soon as possible) if we added Jim Schaafsma to our next call. . . .

(Defs.' Opp'n Ex. 1 at 2; Pls.' Reply Ex. A, Affidavit of Robert F. Gillett (Jan. 30, 2009), at 5.) Mr. Nemec replied, the same day, saying:

> We're still working with the program offices to get specific information for further discussions. When we get that information, we'll set up another call.

(*Id.* at 1; *Id.*) On October 7, Mr. Gillett replied, saying:

> Gary- - Thanks for the contact. The delay is o.k., but I want to make a couple comments.
> *In our internal discussions, there was a strong sense that plaintiffs couldn't let this drag on for an extended period of time through a series of week-to-week extensions- - like we did with the relocation notices between March and August.* Also, . . . HUD can accomplish through a settlement what it may not be able to accomplish programmatically. So, if we were to agree to the 80 vouchers and put them in order, we have a pretty high confidence level that . . . we will be able to figure out how to implement the order. We'd encourage you to at least consider this approach. . . .

(*Id.*; *Id.* (emphasis added).)

HUD interprets the highlighted language above as a clear indication that Plaintiffs

3

were not inclined to pursue extended settlement discussions. HUD claims it was because Plaintiffs indicated they were likely not interested in further extension for extended settlement talks that it filed its opposition to Plaintiffs' motion for preliminary injunction.

Plaintiffs disagree. Mr. Gillett states his message was not meant to end discussions, but to express that time was of the essence, and that since the parties already had an agreement in principal, they should move forward on the details.

Plaintiffs also contend that settlement negotiations continued after October 7. Mr. Gillett describes a conversation with Ms. Christopher and Mr. Nemec on October 14, during which Ms. Christopher said the settlement proposal had been typed up, sent to the Acting Assistant Secretary for Multi-Family Housing for approval, and that she expected to hear back very soon. Mr. Gillett states he called Ms. Christopher on October 23, to express disappointment that HUD filed its opposition to Plaintiffs' request for preliminary injunction without first talking to him about settlement. He claims Ms. Christopher assured him that settlement was, in her opinion, still alive, and that HUD was still researching settlement issues. Mr. Gillett contends he relied on Ms. Christopher's statements to continue working on settlement details, and particularly to research sources of local funding.

On November 3, Plaintiffs filed a motion for leave to file excess pages and reply in support of their motion for preliminary injunction.

On November 25, Thanksgiving Tuesday, Plaintiffs' counsel James Schaafsma called Defendants' counsel Frank Zebot to propose a deposition of HUD personnel pursuant to Fed. R. Civ. P. 30(b)(6). The parties' versions of this exchange differ:

Plaintiffs claim Mr. Zebot answered "okay" to the proposal and agreed to follow up with HUD officials about arrangements; Defendants reply that Mr. Zebot only agreed to review the proposal, not to arrange the depositions. Mr. Schaafsma also sent Mr. Zebot an e-mail with a draft notice of deposition.

On Thanksgiving Wednesday, Mr. Zebot left Mr. Schaafsma a telephone message saying he was inclined to seek a protective order if Plaintiffs pursued a Rule 30(b)(6) deposition. According to Plaintiffs, on December 1, Mr. Zebot indicated by e-mail that his opposition was based on the deadline for completing discovery, and the excessive breadth of Plaintiffs' request. In response, Mr. Schaafsma mailed Mr. Zebot a revised notice of deposition with a narrower scope; according to Defendants, the revised notice arrived on December 2, after the deadline for completing discovery had passed.

On December 16, the parties met before Magistrate Judge Pepe for a settlement conference, but according to Plaintiffs, Defendants refused to consider any option other than to dismiss the case. Also according to Plaintiffs, Magistrate Judge Pepe indicated he did not have the authority to consider whether to extend discovery.

### III. ANALYSIS

The Federal Rules of Civil Procedure stipulate that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In deciding whether to grant a request for modification, the Court must consider the moving party's diligence in attempting to meet the requirements of the existing order, and the potential prejudice to the party opposing the change. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).

Plaintiffs contend their failure to request depositions until the last minute was not due to lack of diligence, but to a genuine wish to avoid unnecessary discovery, and because they believed on several occasions that settlement was possible.  Plaintiffs claim they first felt an arrangement was likely in April 2008, when Defendants postponed action on relocation notices, and until the enactment of Section 226, on July 31.  The second time was during settlement negotiations in September and October, when Defendants indicated several times they were reviewing the offer, but never actually responded.  Plaintiffs also argue that the deposition is necessary due to Defendants' inadequate responses to their interrogatories.

Defendants respond that Plaintiffs had more than enough time to arrange depositions, and knew Defendants always considered litigation as a viable alternative to settlement.  Defendants argue that Plaintiffs explanations are insufficient to excuse their failure to file deposition requests between April and August, after August 26, when HUD announced it would not transfer Parkview to the Ypsilanti Housing Commission, and especially after October 17, when HUD filed its opposition to Plaintiffs' motion for preliminary injunction.

Plaintiffs' explanations for holding off on seeking depositions before November 2008 are reasonable, and provide good cause.  Secondly, HUD does not contend that extending discovery would cause it undue prejudice.  It argues that the scope of Plaintiffs' request is very broad, and would require deposing several individuals in Washington, D.C., Fort Worth, Texas, and in Detroit.  While these complaints may be valid, these issues would have arisen even if Plaintiffs had filed their request well in advance of the deadline.

## IV.     CONCLUSION

For these reasons, the Court **GRANTS** Plaintiffs' Motion to Modify Scheduling Order (Phase I) to Permit Deposition.  However, the parties are required to meet to discuss how depositions can be limited to what is really necessary, so that discovery is not extended indefinitely.

The Court requires this meeting to occur as soon as possible.  A conference call is scheduled for May 14, 2009 at 4:00 p.m. unless the parties submit a stipulation concerning discovery sooner.  The Court will initiate the conference call.

**IT IS ORDERED.**

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated:  April 24, 2009

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 24, 2009.
>
> s/Linda Vertriest
> Deputy Clerk